In re ALBION DISPOSAL, INC., I & J Disposal of Western New York, Inc., J & I Disposal, Inc., 11372 Main Street, Inc., Orleans Sanitary Landfill, Inc., Debtors.

Craig A. SLATER, as Trustee of Albion Disposal, Inc., I & J Disposal of Western New York, Inc., J & I Disposal, Inc., Orleans Sanitary Landfill, Inc. and Waste Management of New York, Inc., Plaintiffs,

v.

TOWN OF ALBION, Town Board of the Town of Albion, Defendants.

Bankruptcy Nos. 91–12805K to 91–12807K, 91–12889K and 91–12878K.
Adv. No. 96–1093K.

United States Bankruptcy Court,
W.D. New York.

Dec. 12, 1996.

Joseph Zagraniczny, Bond, Schoeneck & King, L.L.P., Syracuse, NY, for Waste Management of New York, Inc.

Raymond L. Fink, Harter, Secrest & Emery, Buffalo, NY, for Trustee.

Cheryl R. Storie, Julia S. Kreher, Hodgson, Russ, Andrews, Woods & Goodyear, L.L.P., Buffalo, NY, for Defendants.

MICHAEL J. KAPLAN, Chief Judge.

## I. BACKGROUND

The history of these cases is set forth in detail in this Court's previous decision in the case of *In re Albion Disposal, Inc.*, 152 B.R. 794 (Bankr.W.D.N.Y.1993), and need not be repeated here. Relevant to this decision, however, are certain facts which are repeated below.

Prior to their 1991 bankruptcy filing the Debtors in these cases owned and operated a solid waste disposal facility (the "landfill") in the Town of Albion. In 1989, the Orleans Sanitary Landfill, Inc. ("OSL") filed applications with the Town and the Department of Environmental Conservation ("DEC"), which would enable vertical and horizontal expansion of the landfill (the "expansion applications").

In April 1992, the landfill premises were leased to Waste Management of New York, Inc. ("Waste Management"), and in December 1993, Waste Management acquired the rights to the Debtors' still-pending expansion applications. During the course of this bankruptcy case, Waste Management and the Trustee worked diligently to address the various concerns of the Town of Albion and to bring the landfill into compliance with environmental guidelines. As an expanded landfill, Waste Management's lease payments to the estate would fund a plan sufficient to pay millions of dollars of debt in full. But without the authority to expand the landfill, lease payments to the bankruptcy estate from Waste Management will be de minimis.

In January 1996, the Town of Albion, after actively participating in this bankruptcy case, imposed a moratorium on consideration of landfill license applications. Waste Management's expansion applications, not yet having been approved, were stalled by this moratorium. In March 1996, the Town effectively banned the landfill expansion contemplated by the Debtors and Waste Management.[1]

This Motion to Dismiss presents the question of the extent to which this Court may interfere with the legislative enactments of the Town of Albion. But then again, perhaps the issue can also be stated: To what extent may the Town interfere with property that is in the custody of a federal court.

The present dispute is a collision between a small town's desire to legislate the size of a particular landfill in its midst, and the duty of the Court to protect the landfill's creditors from inappropriately having to bear the expense of that legislation.

---

1. The language of Local Laws 1, 2, 3, 4, and 5 is, at times, highly technical. The overall effect of the enactments is to prohibit further solid waste disposal in the Town of Albion, and to impose stricter zoning and permitting requirements on other types of waste management facilities.

The Debtors and their co-venturer, Waste Management have couched the dispute in several different theories and causes of action that all boil down to one when the allegations are assumed to be true: After five years of participation in a Chapter 11 case (five cases, actually) that worked incessantly (and in cooperation with the Town) to make the existing landfill safe and a "good neighbor" and to expand it onto adjoining lands, and after millions of dollars were expended in that effort and over a half-million dollars was paid to the Town itself in host-community fees in that effort, may the townsfolk change their minds and elect a complaint board that votes to refuse to consider the expansion application?

(Waste Management presumably is ready, willing and able to meet every legally enforceable demand that the Town could make a pre-condition to approval of the application. Thus, its counsel represents that but for the Town's refusal to consider the application, it can complete every requisite to obtaining a "right" to expand the landfill).

As noted above, an expanded landfill is projected to easily pay, over a period of years, all of the many millions of dollars of debt owed by the Debtors, and earn substantial profits for Waste Management.

Were there no allegations of a nexus between the legislation in question and these five Chapter 11 reorganization cases, it would be as "unthinkable" for this Court to interfere in local legislative matters as it was thought, by the court in the case of *Hamptons Hospital & Medical Center v. Moore*, 52 N.Y.2d 88, 94, 436 N.Y.S.2d 239, 417 N.E.2d 533 (1981), to be "unthinkable" that a certain Public Health Council could be estopped from discharging its statutory responsibilities. But this is the Town's Motion to Dismiss. No discovery has been had. And there are two nexi (perhaps more) that clearly exist which the Plaintiffs must be given an opportunity to explore: (1) the Town's alleged active, vigorous participation before the Court in the processes of these reorganization cases and its alleged representations that no such legislation would be enacted; and (2) millions of dollars of expenditures

made on authority of this Court, allegedly at the Town's behest.

## II. DISCUSSION

### A. The Importance of 11 U.S.C. § 362(a)

■ This Court is a statutory "unit" of the United States District Court for the Western District of New York. That august superior court has often had its constitutional authority challenged by political subdivisions, never successfully. Whether vindicating rights bestowed by the Constitution or "merely" exercising the judicial power of the United States in lesser ways, the law which the United States District Court orders to be enforced is often supreme.

■ The Bankruptcy Court is not lesser than the District Court in that specific regard. If 11 U.S.C. § 362(a) has in fact been violated, no claim of federalism or immunity will protect the act. *See Westefield v. IRS (In re Westefield)*, 172 B.R. 178 (Bankr. W.D.N.Y.1994). Even elected local officials swear to obey the Constitution and the laws of the United States, one may assume.

For the reasons set forth in the Plaintiffs' briefs and this Court's decision in the case of *Slater v. Smith (In re Albion Disposal, Inc. et al.)*, 152 B.R. 794 (Bankr.W.D.N.Y.1993), the Court holds that "property of the estate" of one or more of these Debtors is being adversely affected by the ordinances in question. Whether that is occurring permissibly or impermissibly, under the statute, is a matter for discovery.

### B. Governmental Action

■ This Court unhesitatingly offers the dictum (as it did at oral argument) that if these ordinances had been enacted in an environment and under circumstances in which they merely "incidentally" devalued the Debtors' property, then they would be immune from § 362 attack no matter how drastic the diminution. As noted hereinafter, the Bankruptcy Court may not insulate a debtor from the lawful prerogatives of the political subdivision within which the Debtor operates, where those prerogatives do not specifically "target" the Debtor.

■ But when one carefully examines the language of 11 U.S.C. § 362(a)(1), (3), and

(b)(4) and (5), one finds that the popular wisdom to the effect that "the automatic stay does not interfere with the police or regulatory power of a government" is simply incorrect. Subsection (b) of § 362 insulates only a governmental entity's commencement or continuation of certain actions or proceedings or the enforcement of certain judgments. Nothing in the statute permits the governmental unit to exercise control over property of the estate with impunity. Legislative action that violates § 362(a)(3) is violative of the automatic stay, no matter how public-minded and well-intentioned.

This Court agrees with those courts and commentators who believe that some exercises of control by a governmental entity are so inextricably linked to (or otherwise are indistinguishable from) the type of (a)(1) action that (b)(4) forgives, that (a)(3) should be ignored entirely when the (b)(4) defense is found to exist.[2] Surely, for example, if a government commences a license revocation proceeding against a debtor for failure to meet certain inspection requirements, and the (b)(4) defense to an (a)(1) attack is sustained, an (a)(3) attack based on a mere rephrasing of the act as some sort of seizure of the debtor's property should not be sustained.[3]

But this Court does not agree that (a)(1) and (a)(3) are Siamese twins every time a governmental function is at issue, and consequently this Court does not agree with those who believe that a (b)(4) defense always precludes an (a)(3) attack. Some seizures of property, for example, simply do not involve prepetition activity of the debtor, and so cannot possibly implicate (a)(1).

To be sure, 28 U.S.C. § 959 makes a Chapter 11 estate vulnerable to all generally applicable laws affecting its business operation, and no leave of this Court is required to enforce those laws in certain instances. But it is § 362(a)(3) and only § 362(a)(3) that is implicated when a government, fully aware that property is property of a Chapter 11 estate, condemns, seizes, confiscates, shuts down, or liens that property, because of some non-criminal postpetition activity of the debtor or some new governmental initiative, or some perceived connection between that property and the activities or the debt of somebody else.

For example, if the IRS believes that some postpetition acquisition of property by the Chapter 11 debtor was accomplished as a nominee for some non-debtor taxpayer, is it free to file a nominee lien against the property without leave of this Court? Probably not.

On the other hand, if a local health department believes that what it knows to be a Chapter 11 debtor-restaurant has fallen out of compliance with sanitation requirements, it probably could shut the debtor down summarily because of 28 U.S.C. § 959.

We must not lose sight of what § 362(a) is all about. It is about property *in custodia legis*. Nothing in the many provisions of § 362(b) derogates this Court's duty and prerogative to determine what happens to property in its constructive custody.

Certainly Congress can interfere with that, perhaps even with a degree of retrospective application. Indeed, some in Congress sought to do so during the pendency of the cases that led to such decisions as *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (leading to enactment of § 1113) and *In re Johns–Manville*, 36 B.R. 727 (Bankr.S.D.N.Y.1984) (leading to consideration of an "insolvency" prerequisite for Chapter 11 relief). The debtors that operate businesses under our protection must obey law. But they are not to be targets for local units of government who oppose them.

A distinction is to be made between legislation that incidentally affects a bankruptcy estate and legislation that is specifically intended to affect property of a particular Chapter 11 estate. If the allegations of the Complaint at Bar are upheld, it would be clear that the local laws in question were

---

2. *See* James O. Johnson, Jr., *The Inequitable Machinations of Section 362(a)(3) Rethinking Bankruptcy's Automatic Stay Over Intangible Property Rights*, 66 S.Cal.L.Rev. 659, 690–996 (1992).

3. *In re Kish*, 41 B.R. 620, 623 (Bankr.E.D.Mich. 1984).

targeted at these Debtors and had as their specific purpose an objective of divesting these Debtors of an intended use of the assets of the estate, to wit, the lands titled to the Debtors and the contract rights negotiated by the Debtors among themselves, Waste Management, and John and Irene Smith (the principals of the Debtors).

One can imagine no more effective way for a governmental entity to "control" such property than to adopt legislation that would prohibit the proposed use.

If, on the other hand, it is determined that the effect on these Debtors, however devastating, was incidental to a well-considered, uniform approach to a broader problem, then the legislation might not have been an "act to exercise control" over these Debtors' property, and did not violate the automatic stay.

That the correct focus is on the matter of "control" rather than of "bad faith" or "good faith" is made clear by *Board of Governors v. MCorp Financial, Inc.*, 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) and *In re National Cattle Congress*, 179 B.R. 588 (Bankr.N.D.Iowa 1995).[4]

### C. The Automatic Stay is not a Permanent Injunction

■ All of that being said, bankruptcy experts must constantly remind themselves that the fact that an act is prohibited by the automatic stay does not mean that it is forever and immutably enjoined. There is a tendency among bankruptcy experts to consider stayed matters to be encased in stone forever except for the specialized subgroup in which the stay can be lifted "for cause ... including a lack of adequate protection." 11 U.S.C. § 362(d). The famous Second Circuit decision in the case of *Lincoln Savings Bank v. Suffolk County Treasurer (In re Parr Meadows Racing Assoc.)*, 880 F.2d 1540 (2d Cir. 1989), is an example. Many practitioners

consider the *Parr Meadows* case to stand for the proposition that governmental entities cannot obtain *ad valorem* tax liens on real estate in Chapter 11 cases, when in fact the true holding of the case is that all the taxing entity needs to do is make a motion to lift the stay, and sustain it, in order to have its tax lien attach.[5]

Thus it is also true that the fact that local governments may be automatically stayed from adopting certain good faith and well-meaning ordinances, and carrying out the will of the electorate and the good of the common weal, stands for nothing more than the proposition that they need to ask the Bankruptcy Court permission to do so first, if they are targeting a specific debtor. The noble and lofty issues briefed by the Town at Bar [6] should be considered in the context of whether the stay should be lifted, and not in the context of what to do about the fact, if it is true, that the Town simply has ignored the dictates of § 362(a) and challenged the authority of this Court.

### D. Estoppel

■ If that were all that the present Complaint implicates, this Court simply would deem the existing proceeding to be the Town's motion to lift the automatic stay *nunc pro tunc*, to validate the enactment of Local Laws 1, 2, 3, 4 and 5, and would decide whether the stay should lift. But that is not all that is implicated. Even if 11 U.S.C. § 362(a) did not exist, there would be the issue of estoppel.

No court can function if the persons that appear before it elicit benefits from the court's process, and incite court action, and harvest the fruits of the court's authority, but thereafter ride off into the sunset with those fruits and declare its own promises nugatory, wrapping itself in the town flag and declaring its change of heart to be a matter of govern-

---

4. *Beker Indus. Corp. v. Florida Land & Water Adjudicatory Commission (In re Beker Indus. Corp.)*, 57 B.R. 611 (Bankr S.D.N.Y.1986) predated *MCorp.*, and, in this Court's view, read § 362(a)(3) too narrowly. *Hillis Motors Inc. v. Hawaii Automobile Dealers' Assoc.*, 997 F.2d 581 (9th Cir.1993) is a more recent view.

5. *See* Carl L. Bucki, *The Automatic Stay and Real Property Tax Liens*, 66 Am.Bankr.L.J. 233 (1992).

6. For example, under the ambit of the State's right to legislate for the health, welfare, safety, and aesthetic concerns of the community, the Town also argues such issues as comity with state courts, respect for state law, separation of powers, lack of well-settled state law precedent, and the unique local interests that land use laws present.

mental authority. No case cited by the Town in its brief regarding estoppel says otherwise. The Town's only response to this Court's citation of the case *Cukierman v. Mechanics Bank (In re J.F. Hink & Son)*, 815 F.2d 1314 (9th Cir.1987), holding that such participation before the Court in a Chapter 11 case may result in estoppel, is that that case ought not to be applied here because the party at issue is a municipality rather than a private person, and the municipality is asserting a governmental function rather than a proprietary function.

After discovery, this Court might determine that the *Hink* result is not called for here. For example, discovery might demonstrate that whatever participation there was in the processes of this Court was undertaken by agents of the Town who were without proper authority, and who the other participants before the Court (and even the Court itself) should have known were without proper authority. If this Court erred in believing that a future town board could be bound to the representations that were being made (or erred in not being aware that this was a possible problem), then this Court will admit the error and will not visit its own error upon the Town. But who said what to whom, on whose authority, on the basis of what duly enacted resolutions, and perhaps numerous other matters, must be explored in discovery. Merely invoking the mantle of "governmental function" does not preclude inquiry into the nature, substance, quantity and quality of the Town's participation in the reorganization proceedings over which this Court has presided.

### E. An Analogous Posture

Ultimately, if all of the allegations of the Complaint are proven true, this Adversary Proceeding will have resolved itself into something much akin to this: a motion by the Town of Albion under § 362(d), five years into these cases, seeking permission to enact and enforce Local Laws 1, 2, 3, 4 and 5 because of a good faith change in the attitude of the townsfolk towards licensed landfills, resulting in the election of a new town board that reflects that change; which motion is opposed by the Debtors and Waste Management on the grounds that the extent and nature of the Town's involvement in these proceedings for a five year period, and the benefits conferred on the Town as a result thereof, militate against a lift of stay.

If such an analogous posture is presented to this Court after discovery, then this Court will have to deal with the principles briefed by the Town. It may be that the Town would be entitled to a lift of stay, with total impunity. It may be that the Town would not be entitled to lift of stay and would be precluded from enacting the ordinances that strip these Debtors of the opportunity to repay their creditors. It may be that the Town must be permitted to ban the expansion of a landfill in its midst, but that it must make restitution for the benefits that have been conferred upon it.[7]

The Court is persuaded by *Beker Indus. Corp. v. Florida Land & Water Adjudicatory Commission (In re Beker Indus. Corp.)*, 57 B.R. 611 (Bankr.S.D.N.Y.1986), *In re National Cattle Congress*, 179 B.R. 588 (Bankr. N.D.Iowa 1995) and the authorities cited therein that a balancing test must then be applied. But as unclear as the eventual outcome may be, even the questions for resolution cannot be clearly framed without discovery. The Town might think itself entitled to a ruling now, but the Court cannot envision every possible state of facts that might be elicited in discovery, and the Court will now say only that there may be some state of facts under which these ordinances may be stricken down or may be enjoined in the absence of restitution.

### III. CONCLUSION

Although the legal theories that differentiate the causes of action may conceivably be different, the factual predicates are identical. Consequently, the Motion to Dismiss is currently denied and discovery shall proceed apace. At its prerogative, the Town may apply to the Court to reopen and renew its Motion to Dismiss after discovery has pro-

---

**7.** Although not currently before the Court, the Plaintiffs here have applied for leave to amend to add a restitution cause of action.

ceeded to a point at which the Town would be forced to needless expense if the Plaintiffs were not currently compelled to refine their legal theories. Moreover, the Court will not currently compel any party to provide discovery that is beyond the focus of this Decision, unless warranted by intervening discovery.[8]

▮ In light of this Court's holding that the Town's action has the effect of controlling property of these Debtors, this Court's exclusive and core jurisdiction over the § 362(a) and estoppel causes of action is clear under 28 U.S.C. § 1334(d) and 28 U.S.C. § 157(b)(2)(A), (E), (G) and (O). So far as those causes are concerned, the Town's argument to the contrary is rejected, and its request for discretionary abstention is denied without prejudice to later renewal. Its request for mandatory abstention in inapposite as to the § 362 cause of action in light of the express language of 28 U.S.C. § 1334(c)(2), and particularly in the last sentence thereof.

In sum, the Town's Rule 12(b)(6) motion to dismiss the § 362 cause of action is denied, as is its Rule 12(b)(2) motion directed at the estoppel cause of action. Consideration of its Rule 12(b)(2) motion directed at the remaining causes of action will be suspended pending discovery sufficient to warrant further attention.

A Rule 16 scheduling conference shall be convened.

SO ORDERED.

---

8. For example, it is hard at this time to understand how the causes of action based on breach of promise and taking of vested rights can be sustained as causes separate and distinct from the estoppel cause of action. No party should, at this time, be put to discovery as to matters that would be relevant only to those theories, and not to the § 362(a) and estoppel theories.