SAN FRANCISCO DRYDOCK, INC., a Corporation; Service Engineering Company, Inc., a Corporation, Plaintiffs–Appellants,

v.

John DALTON, Secretary of the Navy; Dennis Drennan, Real Estate Contracting Officer, Both in Their Official Capacities; Astoria Metal Corporation, Defendants–Appellees.

No. 96–15549.

United States Court of Appeals,
Ninth Circuit.

Submitted May 9, 1997 *.

Decided Nov. 12, 1997.

Peter B. Jones, Jones & Donovan, Irvine, CA, for plaintiffs–appellants.

John F. Barg, John D. Fiero, Landels, Ripley & Diamond, San Francisco, CA, defendants–appellees Astoria Metal Corporation.

James A. Coda, Assistant United States Attorney, San Francisco, CA, for federal defendants.

Before: PREGERSON, JOHN T. NOONAN, Jr. and KLEINFELD, Circuit Judges.

NOONAN, Circuit Judge.

San Francisco Drydock, Inc., (SFD) and Service Engineering Co. (SECO), collectively

---

* The panel unanimously finds this case suitable for submission on the record and briefs without oral argument. Fed. R.App. P. 34(a); Ninth Circuit Rule. 34–4.

the plaintiffs, appeal the judgment of the district court in favor of John H. Dalton, Secretary of the Navy, and Dennis P. Drennan, Real Estate Contracting Officer, (collectively the Navy) and Astoria Metal Corporation (Astoria). The gravamen of the plaintiffs' complaint is that the Navy invited proposals to lease a drydock located at Hunters Point, San Francisco on one basis and then unfairly changed that basis. The issue presented is whether the Navy was bound by the Federal Property and Administrative Services Act, 40 U.S.C. § 484(e) ("the Federal Property Act"), to award a lease of a drydock in a closed base by fair and full competition or whether a congressional enactment specifically governing leases at closed bases, 10 U.S.C. § 2667(b), freed the Navy to lease such drydocks, pending their final disposal, without regard to the Federal Property Act. We are bound to harmonize the statutes Congress has written. The Navy proceeded under § 2667(b); it was still bound by the Federal Property Act. Therefore, the judgment of the district court must be reversed and the case remanded for further proceedings.

## THE PROPERTY AND THE PARTIES

*The Property:* Drydock No. 4 is located at Hunters Point Annex, San Francisco. Drydock No. 4 is a graving dock, that is, a permanent structure on land with gates that allow vessels to enter and that then can be closed to drain out the water. In other words it is a dry drydock. Drydock No. 4 is large, over 1,000 feet long and capable of accommodating most vessels now in existence. It is located in a naval shipyard that has been closed. The surrounding community is poor and largely African–American.

*The Plaintiffs:* SFD is the operator of a shipyard at the foot of 20th Street, San Francisco. It has floating drydocks but no graving docks and would like to acquire Drydock No. 4. SFD and its corporate predecessors have engaged in the repair and overhaul of Navy and commercial vessels since 1978. SECO and its predecessors have been engaged in the repair and overhaul of Navy and commercial vessels in the San Francisco Bay area since 1955. It currently operates a ship

repair yard at Pier 50. It neither owns nor leases a drydock and would like to acquire Drydock No. 4.

*The Defendants:* The lessor, the Secretary of Navy and the contracting officer, in their official capacities, and the lessee, Astoria, which had operated a ship repair business since 1988 in Portland, Oregon are co-defendants.

## PROCEDURE

On November 17, 1993, the Navy issued a Request for Proposals or RFP for the lease of Drydock No. 4. The RFP, inter alia, said that the successful bidder must provide a $5 million performance bond. On December 8, 1993 the Navy held a Pre–Proposal Conference at which SFD objected to this requirement and was told by the Navy that it would not be changed. In the light of this response, and receiving no further communication from the Navy, SFD did not bid for the lease.

On February 16, 1994, SECO, Astoria and one other company submitted proposals for the lease. The third company was rated as lacking in experience by the Source Selection Board that evaluated the proposals. SECO and Astoria were both rated good as to experience; good as to the financial information provided; good as to their waste management plans; and good as to their plans for local and minority hiring. SECO was rated good as to use of a drydock for ship repair; Astoria was rated excellent because it would use the dock for "ship-breaking operations." SECO offered the required performance bond and $50,000 in annual rent. Astoria did not submit the performance bond required by the RFP and offered $240,000 annual rent. Astoria was selected and given a five year lease with options to renew for five years and then another five years.

SECO called, Foul! and, with SFD, on February 4, 1995 brought this suit.

On cross-motions for summary judgment, the district court ruled for the Navy and Astoria. In a carefully-reasoned opinion that court held that the Navy had proceeded under 10 U.S.C. § 2667(f) and that this statute did not provide for judicial review; nor did

the court find any other basis for the plaintiffs' case. Citing *Armstrong & Armstrong, Inc. v. United States*, 514 F.2d 402 (9th Cir.1975) and *CACI, Inc. Federal v. United States*, 719 F.2d 1567 (Fed.Cir.1983), the court noted that the plaintiffs might have a claim under an "implied contract" created by the RFP: the court dismissed this claim without prejudice so that the plaintiffs might, if they chose, pursue it in the Court of Claims. The court entered judgment for the Navy and Astoria.

SFD and SECO appeal.

## ANALYSIS

 Standing. The plaintiffs assumed that they had standing to bring this suit; the defendants did not deny it; and the district court accepted the case. It is, however, our obligation to be sure that standing exists and to raise, sua sponte if need be, any deficiency. In some circumstances, as where a party neither participated in the bidding process nor protested afterward and could not qualify as an actual or "prospective" bidder under 31 U.S.C. § 3551, a non-bidder lacks standing to sue. *Waste Management of North America, Inc. v. Weinberger*, 862 F.2d 1393, 1398 (9th Cir.1988). SFD was not such a party and has standing in this case. The RFP provided for a category of what it termed "prospective offerors" who were to come to a "pre-proposal conference" to comment on the RFP. SFD came to the pre-proposal conference and was a "prospective offeror." The RFP said that "this solicitation will remain unchanged unless it is amended in writing." SFD asked for a change in the $5 million performance requirement and was turned down. This rejection of its request for deleting the bond requirement is what kept it from bidding. The RFP said that any information given to any "prospective offeror" would be given promptly "to all prospective offerors" if it was "necessary for submitting offers", or "lack of it would be prejudicial to other prospective offerors." Yet the information that the $5 million performance bond requirement would be waived was not given to SFD as promised, and the solicitation was in effect changed without a written change circulated to all prospective offerors. Unlike the plain-

tiff in *Waste Management*, SFD participated fully in the bidding process as a "prospective offeror," and participated in the "pre-proposal conference" where the performance bond requirement was put at issue. The Navy's breach of its promise to advise SFD of its change in the performance bond requirement is rederessable, because the project could be resubmitted for bidding with SFD having the same information that Astoria took advantage of. SFD, as well as SECO, has standing.

*The Two Statutory Schemes.* The Federal Property Act, 40 U.S.C. § 471 et. seq. is the federal legislation providing "an economical and efficient system for ... the disposal of surplus property." § 471. The Administrator of this system is the Administrator of General Services. § 472(c). Surplus property is excess property not needed by a federal agency. § 472(g). Disposal includes leasing. *Id.* § 484(c). Disposal is to be after publicly advertising for bids, § 484(e)(1), or negotiation if the character of the real property or unusual circumstances "make it impracticable to advertise publicly for competitive bids" and negotiation can obtain the fair market value, or if the disposal is to the States or their subdivisions, §§ 484(e)(3)(G) and (H).

The Defense Base Closure and Realignment Act of 1990, P.L. 101–510, was enacted to provide "a fair process that will result in the timely closure ... of military installations inside the United States." § 2901(b). Under this legislation, the Administrator of General Services is to delegate to the Secretary of Defense his authority "to dispose of surplus property" under 40 U.S.C. § 484, and the Secretary of Defense is to comply with the regulations covering such disposal of surplus property. § 2905(b)(1) and (b)(2)(A).

It is the appellants' position that this legislation compelled the Navy to follow 40 U.S.C. § 484 in leasing Drydock 4. The argument is based on the legislation being comprehensive as to closures, including Hunters Point Annex, and on the additional fact that at the time the Navy put out its RFP on November 19, 1993, this statute was the only statute in existence under which the Navy could act.

By November 30, 1993, however, a new statute was in place, with a different statuto-

ry scheme, under which the Navy contends it acted. The new law, Public Law 103–160, was an amendment to a section of Title 10, Armed Forces, that dealt with leases by the military. Before amendment, the statute dealt chiefly with the leasing of property that was "non-excess," that is, property that might be needed for purposes of the Department of Defense; but the statute also permitted the leasing of property determined to be excess as the result of the closure of an installation. The property could be leased by the Secretary of a military department "to State or local government pending final disposition of such property" if the Administrator of General Services concurred and the Secretary determined that "such action would facilitate state or local economic adjustment efforts." 10 U.S.C. § 2667(f). The amendment, effective November 30, 1993, adopted and broadened this approach. As amended, § 2667(f) provides.

(f)(1) Notwithstanding subsection (a)(3), pending the final disposition of real property and personal property located at a military installation to be closed or realigned under a base closure law, the Secretary of the military department concerned may lease the property to any individual or entity under this subsection if the Secretary determines that such a lease would facilitate State or local economic adjustment efforts.

(2) Notwithstanding subsection (b)(4), the Secretary concerned may accept consideration in an amount that is less than the fair market value of the lease interest if the Secretary concerned determines that –

(A) a public interest will be served as a result of the lease; and

(B) the fair market value of the lease is (i) unobtainable, or (ii) not compatible with such public benefit.

(3) Before entering into any lease under this subsection, the Secretary shall consult with the Administrator of the Environmental Protection Agency in order to determine whether the environmental condition of the property proposed for leasing is such that the lease of the property is advisable. The Secretary and the Administrator shall enter into a memorandum of understanding setting forth procedures for carrying out the determinations under this paragraph.

10 U.S.C. § 2667(f).

■ The Navy leased Drydock No. 4 under the authority of 10 U.S.C. § 2667(f). The evidence is compelling:

1. The lease was for five years. Leases under 40 U.S.C. § 484 can only be for one year. 41 C.F.R. § 47.312(a).

2. The consultation required by § 2667(f) with the Administrator of the Environmental Protection Act was carried out. A Memorandum Of Understanding was executed on May 4, 1994, "as provided by 10 U.S.C. § 2667(f)."

3. Drennan, the contracting officer, had no delegated authority to execute a lease under 40 U.S.C. § 484, but did have authority to lease under 10 U.S.C. § 2667(f).

The objection that the Navy issued its RFP several days before § 2667(f) came into force as law on November 30, 1993 is a quibble. The legislation had been passed as part of the Defense Appropriation Act by the House on November 15 and by the Senate two days later. 107 Stat. 1547, 1966 (1993). The Navy acted under what it knew would be governing law. The Pre–Proposal Conference on December 8, 1993 was held with § 2667(f) as amended in place. The Navy wanted to be able to lease on a long term basis to provide "for community reuse requirements." Final Report Of The Leasing Sub–Working Group Of The Defense Environmental Response Task Force, December 31, 1993. The Navy got the authority it wanted.

■ The problem is that the Navy believed itself dispensed from the Federal Property Act. No such dispensation was given by the amendment. The Federal Property Act is explicit that with certain exceptions explicitly provided by statute, the authority conferred by the Act is "paramount to any authority conferred by any other law and shall not be subject to the provisions of any law inconsistent herewith." 40 U.S.C. § 474. Nothing in the amendment to 10 U.S.C. § 2667 explicitly exempts the Navy. We are bound, therefore, not merely to read the two statutes together, *United States v. 434.00*

**780**

*Acres of Land,* 792 F.2d 1006, 1009 n. 4 (11th Cir.1986), but to regard the Federal Property Act as "paramount."

We are reinforced in this conclusion by the consideration that long-term leases of closed military bases involve substantial amounts of property. To dispense from the tested requirements of the Federal Property Act is to invite political pressure, favoritism, and outright corruption. Nothing of this sort is alleged here. Universal experience teaches that these problems do plague the property arrangements of governments in the absence of fair and open procedures. The procedures do not guarantee honesty, but they are the first line of defense. The requirements of the Federal Property Act are part of this defense.

What of the evident intent of Congress to "facilitate State or local economic adjustment efforts?" It is not obvious that a fair bidding procedure frustrates this intent. There is always the possibility of negotiation if unusual circumstances "make it impracticable to advertise publicly for competitive bids." 40 U.S.C. § 484(e)(3)(G). So far as the record appears on appeal, the Navy did not comply with the Federal Property Act. The lease may have to be set aside and bidding reopened.

Astoria, however, raised a variety of defenses. None of them were reached in the district court. Astoria should now have the opportunity to prove them.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.