222 B.R. 199 (1998)
In re Gregory D. MINER & Dawn E. Miner, Debtor.
H & C DEVELOPMENT GROUP, INC., Appellant,
v.
FIRST VERMONT BANK AND TRUST CO., Creditor/Appellee,
and
Gregory D. Miner & Dawn Miner Debtors/Appellees.
BAP No. 98-50013, Bankruptcy No. 96-15225.
United States Bankruptcy Appellate Panel for the Second Circuit.
July 8, 1998.
*200 Richard A. Kraslow, Richard A. Kraslow, P.C., Melville, New York, for appellant.
Lois R. Phillips, Heim, Shapiro, Anito & McCale, P.C., Albany, New York, for appellee.
Before BURTON R. LIFLAND Chief Judge, and ROBERT L. KRECHEVSKY and CARL L. BUCKI, JJ.

OPINION
LIFLAND, Chief Judge.
H & C Development Group, Inc. ("H & C") appeals an order of the bankruptcy court dated February 23, 1998 (the "Stipulation Order") whereby the court ordered "that *201 there is no binding stipulation between the Debtors and First Vermont Bank and Trust Co. reducing the value of the secured claim of First Vermont Bank & Trust Co. . . ." First Vermont Bank and Trust Co. ("First Vermont") has responded to the appeal but Gregory D. Miner and Dawn Miner (the "Debtors") have not.
Background
On October 4, 1996, the Debtors filed a petition under Chapter 12 of the Bankruptcy Code. First Vermont filed a Proof of Claim alleging a secured claim in the amount of $443,982.63 and subsequently filed an Amended Proof of Claim alleging a secured claim in the amount of $503,056.71. H & C filed a Proof of Claim alleging a secured claim in the amount of $310,000. Both claims were based on loans made to the Debtors secured by the Debtors real property, equipment and inventory, namely nursery stock (the "Nursery Stock") and it is undisputed that First Vermont has the first security interest therein.
On or about February 4, 1997, the Debtors filed their Chapter 12 plan (the "Plan"). On March 27, 1997, First Vermont moved for relief from the automatic stay and to prohibit the use of cash collateral on the ground that the Debtors had failed to make post-petition payments. On May 6, 1997, the bankruptcy court entered an Order Granting Motion for Relief from Stay to First Vermont (the "Relief Order"). Upon the Debtors' motion for reconsideration of the Relief Order, on June 3, 1997, the bankruptcy court temporarily reimposed the stay and scheduled a hearing for July 8, 1997. Meanwhile, on May 8, 1997, H & C filed an objection to confirmation of the Plan on the grounds that the Plan proposed to "strip down" H & C's claim to zero based on understated values of the collateral and that it discriminated unfairly against H & C in that it proposed to pay nothing to H & C on account of its unsecured claim while providing for a pro-rata distribution to general unsecured creditors. A hearing on confirmation was initially scheduled for May 15, 1997 and was adjourned to July 8, 1997, the date scheduled for the hearing of the Debtors' motion for reconsideration of the Relief Order.
At the outset of the proceedings on July 8, counsel for the Debtors, Richard L. Weisz ("Weisz"), reported to the court that a settlement had been reached with First Vermont. He stated:
[T]he debtors have reached a settlement with the first mortgage holder, First Vermont. And that settlement is essentially for the valuation of their claim. The secured portion will be valued at 285,500. The total claim, I believe, is 440,000. The balance will be . . . deemed an allowed unsecured claim. And that includes the bank's lien claim on the land, the equipment and the inventory . . . As part of the stipulation it's agreed that the stay will be maintained until the order of confirmation is entered or until the case is converted or dismissed and that the order of confirmation will have language that will allow the bank to terminate the stay if there's default on terms we set forth in the order of confirmation.
Appendix, Exh. 5, Transcript of Hearing to Reimpose Stay in an Evidentiary Hearing on Valuation before the Honorable Robert E. Littlefield United States Bankruptcy Judge, p. 3, line 21 et seq. First Vermont's then-counsel, Marc Ehrlich, confirmed that this represented his client's position. The bankruptcy judge then asked whether a stipulated order would be submitted and Weisz responded in the affirmative. In fact, no written stipulation was ever submitted to the court. The court then proceeded with a hearing on valuation of the Nursery Stock but did not proceed with the confirmation hearing.
On or about November 18, 1997, the Debtors filed an amended Chapter 12 plan (the "Amended Plan"). While the Amended Plan proposed to treat the unsecured portion of H & C's claim in the same manner as other unsecured claims, it still proposed to "strip down" H & C's secured claim to zero and H & C filed an objection (the "H & C Objection") accordingly. The H & C Objection complained that the Debtors' treatment of H & C's claim ignored the settlement with First Vermont "fixing [First Vermont's] secured claim at $285,000.00" and disputed the valuation of the Nursery Stock adopted by the *202 Debtors.[1] First Vermont also filed an objection to the Amended Plan, disputing H & C's contention that it had reduced its secured claim to $285,000. Rather, First Vermont argued, "First Vermont and Debtors agreed to value the real property consisting of land, Debtors' residence and barns at $285,000, which amount does not consider the value of Debtors' nursery stock inventory."
A hearing on confirmation of the Amended Plan was held on January 8, 1998. With regard to the dispute between the parties concerning the alleged settlement, the bankruptcy court requested that the parties submit briefs and H & C and First Vermont each did so. On February 13, 1998, the bankruptcy court issued its oral decision by telephone, finding that there was no binding stipulation of settlement because the parties did not intend to be bound in the absence of a written stipulation and no written stipulation was ever created, and in accordance with that decision the bankruptcy court entered the Stipulation Order. The record contains no indication that the Amended Plan has been confirmed.
Discussion
With regard to the issues on appeal, according to H & C, "[t]he fundamental question is whether an oral stipulation set forth on the record in open court is binding on the parties. . . ." First Vermont, on the other hand, states that the "fundamental question raised in this appeal" is "whether the oral representations made on July 7, 1997 by attorneys for the Debtors and First Vermont were intended to constitute an agreement to settle First Vermont's claim and set it at an amount equal to less than the value of all of First Vermont's collateral." However, although neither party has raised the issue, we must first consider a jurisdictional question, namely whether the Stipulation Order is a final order with respect to which H & C has an absolute right of appeal.
This Panel has appellate jurisdiction over bankruptcy court decisions if the court order or judgment is final or if the Panel grants a leave to appeal from an interlocutory order or decree. See 28 U.S.C. § 158(a) and (b)(1). An order is "final" for purposes of federal appellate jurisdiction when a decision has been entered that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). However, the requirement of finality is less rigidly applied in bankruptcy appeals. According to the Second Circuit, an order of the bankruptcy court "may be immediately appealed if it disposes of discrete disputes within the larger case." Dubin v. Sec. and Exch. Comm'n (In re Johns-Manville Corp.), 824 F.2d 176, 179 (2d Cir.1987) (quoting In re Saco Local Dev. Corp., 711 F.2d 441, 444-46 (1st Cir.1983)). A "dispute" does not mean "merely competing contentions with respect to separable issues." Chase Manhattan Bank v. AroChem Corp. (In re AroChem Corp.), 198 B.R. 425, 427 (D.Conn.1996). It means "at least an entire claim on which relief may be granted." Id. "Although a `final order' need not resolve all of the issues raised by the bankruptcy, it must completely resolve all of the issues pertaining to the discrete claim." Id. at 427; see also Shimer v. Fugazy (In re Fugazy Express, Inc.), 982 F.2d 769, 775-76 (2d Cir. 1992).
In Providers Benefit Life Ins. Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.), 22 B.R. 500 (N.D.Ga.1982), appeal dismissed, 734 F.2d 794 (11th Cir.1984), the district court found that the bankruptcy court's order refusing to confirm a settlement was not a final order because, although it finally determined the settlement issue, "it does not end the litigation, it does not decide the merits, it does not determine the rights *203 of the parties in the disputed contract, it settles no liability, and establishes no damages." Id. at 504. In reaching its conclusion, the district court relied on Tonkoff v. Synoground (In re Merle's Inc.), 481 F.2d 1016, 1018 (9th Cir.1973). In that case, the Ninth Circuit held that while an order approving a compromise is final because it finally determines the rights of the parties, an order disapproving a compromise is not final because it determines no rights and settles no issues, leaving the questions open for future adjudication. See Royal Bank and Trust Co. v. Pereira (In re Lady Madonna Indus., Inc.), 76 B.R. 281, 284-85 (S.D.N.Y. 1987). See also Expeditors Int'l of Washington, Inc. v. Citicorp North America, Inc. (In re Colortran, Inc.), 218 B.R. 507, 510 (9th Cir. BAP 1997).
Based upon the reasoning in these cases, it is clear that not all of the issues pertaining to the relevant claims have been resolved. Accordingly, we find that the Stipulation Order is not a final order.
Furthermore, this appeal does not fall within the "collateral order" exception to the final-judgment rule established by the Supreme Court in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In order to come within the "small class" of decisions excepted from the final-judgment rule, the "collateral order" doctrine requires that the decision appealed from "(1) must conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the actions, and (3) be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. at 468; Swint v. Chambers County Comm'n, 514 U.S. 35, 41-42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995); United States v. Weiss, 7 F.3d 1088, 1089 (2d Cir.1993) (stating that all three requirements must be met for the non-final order to be appealable); In re Johns-Manville Corp., 824 F.2d at 180. At the very least, this appeal does not meet the third requirement: H & C's rights will not be "irretrievably lost in the absence of an immediate appeal" of the Stipulation Order. See In re Johns-Manville Corp., 824 F.2d at 181 (quoting Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430-31, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985)).
Finally, the granting of leave to appeal is not appropriate. Leave to appeal interlocutory orders of the bankruptcy court is to be granted "if there are controlling questions of law as to which there are substantial grounds for difference of opinion and if an immediate appeal from the order may materially advance the ultimate termination of the litigation." See 28 U.S.C. § 1292(b); In re Johns-Manville Corp., 45 B.R. 833, 835 (S.D.N.Y.1984). Notwithstanding H & C's characterization of the issue on appeal, the issues on this appeal are issues of fact, not law, and as such are not reviewable in an interlocutory appeal. Link v. Mercedes Benz of North America, Inc., 550 F.2d 860, 863 (3d Cir.1977), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). H & C's characterization of the issue on appeal is based upon a misunderstanding of the bankruptcy court's decision. The single affirmative point made by H & C in its brief on appeal is that stipulations made in open court are binding on the parties as if reduced to writing and formally executed. H & C relies on In re Herrera, 23 B.R. 796 (9th Cir. BAP 1982) and New York Civil Practice Law and Rules 2104 ("C.P.L.R.2104"). The bankruptcy court, however, did not decide otherwise. The bankruptcy court concluded that the parties had not created a valid agreement regarding the amount and classification of First Vermont's claim because the parties did not intend to be bound without a written stipulation, not that the parties had entered into such a stipulation but it was not enforceable against them.[2] Whether the parties intended to be bound is a factual issue. See International Minerals and Resources, S.A. v. Pappas, 96 F.3d 586, 593 (2d Cir.1996).
*204 Conclusion
This Panel finds that the Stipulation Order is not a final order and is not excepted from the final order rule under the "collateral order" doctrine. Further, the requirements for granting leave to make an interlocutory appeal have not been met. Accordingly, this appeal is dismissed.
It is SO ORDERED.
NOTES
[1] A hearing on the valuation of the Nursery Stock was initially held on July 8, 1997. Thereafter, on September 12, 1997, upon the consent of the Debtors and H & C, the bankruptcy court issued an order establishing Terry L. Ettinger (the "Appraiser") as the court's expert to value the Nursery Stock and ordering that the value established be binding upon the parties. The Appraiser valued the Nursery Stock, as of October 10, 1997, at $297,686, sold balled and burlapped, or $149,000, sold "in ground". For purposes of the Amended Plan, the Debtors' adopted the latter value while the H & C Objection argued that the former value should be used.
[2] The distinction is well illustrated by Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320 (2d Cir.1997) in which, in a footnote, the court stated that because it agreed with Ciaramella that, under common law principles, Ciaramella never formed an agreement with RDA, it had no reason to rely on C.P.L.R. 2104. The court cited Sears, Roebuck and Co. v. Sears Realty Co., 932 F.Supp. 392, 401-02 (N.D.N.Y.1996) (interpreting C.P.L.R. 2104 as a defense to contract enforcement, and not as a rule of contract formation). See Ciaramella, 131 F.3d at 322 n. 1.