229 B.R. 561 (1999)
In re Gregory & Dawn MINER, Debtors.
H & C Development Group, Inc., Creditor-Appellant,
v.
Gregory & Dawn Miner, Debtors-Appellees.
BAP No. 98-50046, Bankruptcy No. 96-15225.
United States Bankruptcy Appellate Panel of the Second Circuit.
Argued December 18, 1998.
Decided February 8, 1999.
*562 Richard A. Kraslow, P.C., Mellville, New York, by Richard A. Kraslow, for appellant.
Helm, Shapiro, Anito & McCale, Albany, New York, by Lois R. Phillips, for appellees.
Before: KAPLAN, GALLET, and HARDIN, Bankruptcy Judges.

OPINION
GALLET, Bankruptcy Judge.
H & C Development Group, Inc. ("H & C") presents us with two issues on appeal: (1) whether Gregory and Dawn Miner ("the Debtors") and First Vermont Bank and Trust Co. ("First Vermont") were bound by an alleged agreement announced, in open court and on the record, before the United States Bankruptcy Court for the Northern District of New York;[1] and (2) whether the Debtors' second amended Chapter 12 plan (the "Second Amended Plan"), which allegedly did not provide for full payment of H & C's secured claim in purported violation of 11 U.S.C. §§ 1225 & 506(a), should have been *563 confirmed. For the reasons set forth below, we dismiss H & C's appeal, in part, and affirm the Bankruptcy Court's Order confirming the Second Amended Plan.

FACTS
The Debtors filed a Chapter 12 petition on October 4, 1996. First Vermont filed a proof of claim alleging a secured claim in the amount of $443,982.63. First Vermont later filed an amended proof of claim alleging a secured claim in the amount of $503,056.71. H & C filed a proof of claim alleging a secured claim in the amount of $310,000. Both claims were based on loans made to the Debtors, secured by their real property, equipment and inventory, namely nursery stock (the "Nursery Stock"). It is undisputed that First Vermont has the first security interest.
The Debtors filed their Chapter 12 Plan (the "Plan") on February 4, 1997. On March 27, 1997, First Vermont moved for relief from the automatic stay and to prohibit the use of cash collateral on the ground that Debtors had failed to make post petition payments. On May 6, 1997, the Bankruptcy Court entered an order granting the requested relief (the "Relief Order"). The Debtors moved for reconsideration. The Bankruptcy Court then temporarily reimposed the automatic stay, pending a hearing on Debtors' reconsideration motion scheduled for July 8, 1998. On May 8, 1997, H & C filed an objection to the confirmation of the Plan on the grounds that it proposed to "strip down" H & C's secured claim to zero based on understated values of the collateral and that it discriminated unfairly against H & C because it proposed to pay nothing to H & C on account of its unsecured claim while providing for a pro-rata distribution to general unsecured creditors. A hearing on Plan confirmation was initially scheduled for May 15, 1997. That hearing was adjourned to July 8, 1997, the date scheduled for the hearing on the Debtors' motion for reconsideration of the Relief Order.
At the outset of the proceedings on July 8, Debtors' counsel reported to the Court that a settlement had been reached with First Vermont. He stated:
[T]he debtors have reached a settlement with the first mortgage holder, First Vermont. And that settlement is essentially for the valuation of their claim. The secured portion will be valued at 285,500. The total claim, I believe, is 440,000. The balance will be . . . deemed an allowed unsecured claim. And that includes the bank's lien claim on the land, the equipment and the inventory. . . . As part of the stipulation it's agreed that the stay will be maintained until the order of confirmation is entered or until the case is converted or dismissed and that the order of confirmation will have language that will allow the bank to terminate the stay if there's default on terms we set forth in the order of confirmation.
R. at 3-4.[2] First Vermont's counsel, Marc Ehrlich ("Ehrlich"), confirmed that this represented his client's position by stating:
Yes, Your Honor. It is my understanding that the stay is reimposed. That the stay will remain in effect until either the case is confirmed or there's a default post-confirmation. At this point in time we're not moving ahead with the foreclosure because the stay is in effect.
R. at 4.
The Bankruptcy Court then asked whether a stipulated order would be submitted and Debtors' counsel responded in the affirmative. An order was never submitted. At H & C's demand, the court then proceeded with a hearing on valuation of the Nursery Stock but not with the confirmation hearing.
On September 12, 1997, upon the consent of the Debtors and H & C, the bankruptcy court issued an order establishing Terry L. Ettinger (the "Appraiser") as the court's expert to value the Nursery Stock and ordering that the value established be binding upon the parties. The Appraiser valued the Nursery Stock, as of October 10, 1997, at $297,686, sold balled and burlapped, or $149,000, sold "in ground."
On or about November 18, 1997, the Debtors filed their Chapter 12 amended plan (the *564 "Amended Plan"). H & C objected (the "H & C Objection"). For purposes of the Amended Plan, the Debtors adopted the "in ground" value of the Nursery Stock while H & C argued that the "balled and burlapped" value should be used. While the Amended Plan proposed to treat the unsecured portion of H & C's claim in the same manner as other unsecured claims, it still proposed to "strip down" H & C's secured claim to zero.
The H & C Objection also complained that the Debtors' treatment of H & C's claim ignored the Debtors' alleged agreement with First Vermont reducing First Vermont's secured claim to $285,500.00. First Vermont disputed H & C's contention that it had reduced its secured claim. Rather, First Vermont argued, "First Vermont and Debtors agreed that First Vermont's secured claim equals the value, as determined by the court, of Debtor's [sic] real property, equipment, machinery and inventory, all of which is First Vermont's collateral subject to its first security interests."
A hearing on confirmation of the Amended Plan was held on January 8, 1998. With regard to the dispute between the parties concerning the alleged agreement, the bankruptcy court requested that the parties submit briefs and H & C and First Vermont each did so. On February 13, 1998, the bankruptcy court issued an oral decision by telephone (the "Telephonic Decision"), finding that there was no binding settlement because the parties did not intend to be bound in the absence of a written stipulation and no written stipulation was ever created. On February 23, 1998, an order was entered in accordance with that decision (the "February 23 Order").
H & C appealed the February 23 Order. That appeal was denied because it was not a final order. See H & C Dev. Group, Inc. v. First Vt. Bank & Trust Co. (In re Miner), 222 B.R. 199 (2d Cir. BAP 1998). In that decision, Chief Judge Lifland, writing for the Panel, noted, in apparent dicta, that
Notwithstanding H & C's characterization of the issue on appeal, the issues on this appeal are issues of fact, not law, and as such are not reviewable in an interlocutory appeal. H & C's characterization of the issue on appeal is based upon a misunderstanding of the [B]ankruptcy [C]ourt's decision. The single affirmative point made by H & C in its brief on appeal is that stipulations made in open court are binding on the parties as if reduced to writing and formally executed. H & C relies on In re Herrera, [23 B.R. 796 (9th Cir. BAP 1982)] and New York Civil Practice Law & Rules 2104. The Bankruptcy Court, however, did not decide otherwise. The [B]ankruptcy [C]ourt concluded that the parties had not created a valid agreement regarding the amount and classification of First Vermont's claim because the parties did not intend to be bound without a written stipulation, not that the parties had entered into such a stipulation but it was not enforceable against them. Whether the parties intended to be bound is a factual issue.
Id. at 203 (internal citations and footnotes omitted).
The hearing on confirmation of the Amended Plan was held on May 1, 1998. At the hearing, the Bankruptcy Court determined that H & C had a secured claim of $15,558.00. "This number represented the balance of the equity in the Debtors' assets after allowing First Vermont a secured claim of $440,000. . . ." The Amended Plan could not be confirmed because it did not provide for H & C's secured claim.
The Debtors filed their Second Amended Plan on May 25, 1998, which incorporated H & C's secured claim. At the July 9, 1998 confirmation hearing, H & C objected. The Bankruptcy Court confirmed the Second Amended Plan and an order was entered on August 6, 1998.

Standards of Review
Rule 8013 of the Federal Rules of Bankruptcy Procedure determines the scope of our review of a bankruptcy court's judgment, order or decree. Accordingly, a bankruptcy court's findings of facts may not be set aside unless clearly erroneous, and a bankruptcy court's legal conclusions are reviewed de novo. See In re David Fischer, 202 B.R. 341, 344 (E.D.N.Y.1996); In re Dill, 163 B.R. 221, 224 (E.D.N.Y.1994); Piccolo v. *565 Dime Sav. Bank of N.Y., 145 B.R. 753 (N.D.N.Y.1992); In re Southold Dev. Corp., 134 B.R. 705 (E.D.N.Y.1991). Accord In re Ionosphere Clubs, 922 F.2d 984, 988-89 (2d Cir.1990), cert. denied, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991).
A. Clearly Erroneous
A finding of fact is clearly erroneous within the meaning of Rule 8013, made applicable by Fed.R.Civ.P. 52(a), when "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). While the trial court's findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden. See Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2585 (1995). If two views of evidence are possible, the trial judge's choice between them cannot be clearly erroneous. See Anderson v. City of Bessemer, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "To be clearly erroneous, a decision must strike [us] as more than just maybe or probably wrong; it must . . . strike [us] as wrong with the force of a five-week-old, unrefrigerated dead fish." Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228 (7th Cir.), cert. denied, 493 U.S. 847, 110 S.Ct. 141, 107 L.Ed.2d 100 (1989).
B. De Novo
A de novo review allows us to decide the issue as if no decision had previously been rendered. See Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472 (6th Cir.1996); In re New England Fish Co., 749 F.2d 1277 (9th Cir.1984). No deference is given to the Bankruptcy Court's decision, and we are free to disregard the Bankruptcy Court's reasoning and determination, as if we were the original trial court in the matter. See Razavi v. Commissioner, 74 F.3d 125 (6th Cir.1996); Rae v. Union Bank, 725 F.2d 478 (9th Cir.1984).

ANALYSIS
A. Standing
H & C argues that the alleged agreement entered in open court between the Debtors and First Vermont is binding on the parties as if reduced to writing and formally executed. If First Vermont and the Debtors are held to their on-the-record alleged agreement, H & C avers, its secured claim is far greater than that found by the Bankruptcy Court and the order confirming the Second Amended Plan should be reversed.
The threshold issue is whether H & C has standing to appeal the February 23 Order. Although the parties failed to address this issue in their papers, we are obligated to raise issues of standing sua sponte. See Lang v. French, 154 F.3d 217, 222 (5th Cir. 1998) (noting that standing is a constitutional requirement of a "case or controversy" and lack of standing deprives the court of subject matter jurisdiction); San Francisco Drydock, Inc. v. Dalton, 131 F.3d 776, 778 (9th Cir.1997); Licensing By Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 387-88 (2d Cir.1997) ("Whether a claimant has standing is `the threshold question in every federal case, determining the power of the court to entertain the suit'") (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); Kowal v. Malkemus (In re Thompson), 965 F.2d 1136, 1140 (1st Cir. 1992).
The Bankruptcy Code does not expressly define standing. Accordingly, courts have applied the "aggrieved person" standard from former section 39(c) of the Bankruptcy Act. See Kabro Assocs., LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 273 (2d Cir.1997). An "aggrieved person" is one who "is `directly and adversely affected pecuniarily' by the challenged ruling of the bankruptcy court." Id. (citing Kane v. Johns-Manville Corp., 843 F.2d 636, 641 (2d Cir.1988)). Appellants bear the burden to demonstrate standing. See School District of Lancaster v. Lake Asbestos of Quebec, Ltd., 921 F.2d 1330, 1332 (3d Cir.1990), cert. denied, 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 720 (1991).
*566 Counsel to H & C argues that it has standing to enforce the alleged agreement as a third party beneficiary. We disagree and dismiss that branch of H & C's appeal. New York law[3] provides that only parties to an agreement or intended third party beneficiaries may seek enforcement of contracts. See Crown Wisteria, Inc. v. F.G.F. Enters., Inc., 168 A.D.2d 238, 241, 562 N.Y.S.2d 616, 618 (N.Y.App.Div. 1st Dep't 1990) (citing Lawrence v. Fox, 20 N.Y. 268 (1859)). Incidental beneficiaries do not have standing to seek enforcement. Id. at 242, 562 N.Y.S.2d 616 (citing Associated Flour Haulers & Warehousemen v. Hoffman, 282 N.Y. 173, 26 N.E.2d 7 (1940)). H & C was not a party to the alleged agreement between the Debtors and First Vermont. Thus, the inquiry here is whether H & C is an intended third party beneficiary with standing to seek enforcement of the alleged agreement.[4]
New York law has adopted the Restatement (Second) of Contracts § 302 (1979) in recognizing a third party's right to enforce a contract if that third party is an intended beneficiary of the contract. See Flickinger v. Harold C. Brown & Co., Inc., 947 F.2d 595, 600 (2d Cir.1991) (citations omitted). Under § 302 of the Restatement (Second) of Contracts:
(1) Unless otherwise agreed between promissor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
Restatement (Second) of Contracts, § 302(1) (1981).
Third party beneficiary status is established by showing that the parties to the contract intended at the time of contracting to grant the benefit claimed. See Askir v. Brown & Root Servs. Corp., 1997 WL 598587 at *4 (S.D.N.Y. Sept. 23, 1997) (citing Conway v. Icahn & Co., Inc., 16 F.3d 504, 509 (2d Cir.1994)); Beveridge v. New York Elevated R.R. Co., 112 N.Y. 1, 26, 19 N.E. 489 (1889). However, "a party need not necessarily be specifically mentioned in a contract to be considered a third party beneficiary." Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir.1996) (citing In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F.Supp. 712, 733 (S.D.N.Y.1989); Restatement (Second) of Contracts, § 302(1) (1981)). New York only requires that the parties' intent to benefit a third party must be shown on the face of the agreement. See In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F.Supp. at 733 (citations omitted). Furthermore, "in determining third party beneficiary status, it is permissible for the court to look at the surrounding circumstances as well as the agreement." Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 573 (2d Cir.1991) (citing Septembertide Publ'g, B.V. v. Stein & Day, Inc., 884 F.2d 675, 679 (2d Cir.1989); Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208, 212 (1985)).
It is well-settled that both a promisee and a third party beneficiary may sue the promissor to enforce a contract. See O.P.M. Leasing Servs., Inc., 21 B.R. 993, 1005 (Bankr. S.D.N.Y.1982) (citations omitted). The concept of the third party beneficiary's right to enforce the contract derives from the concept that "it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it *567 is to pay" or perform. See In re American Envtl. Servs. Co., Inc., 164 B.R. 462, 465 (Bankr.W.D.N.Y.1994) (citing Seaver v. Ransom, 224 N.Y. 233, 237, 120 N.E. 639, 640 (1918)).
The record is devoid of any evidence that either the Debtors or First Vermont intended to bestow a benefit to H & C. At the hearing, where H & C's attorney was present, the Debtors and First Vermont did not mention H & C, nor did H & C speak on the record. In addition, nothing in the record indicates that H & C gave consideration for any benefit as a result of the alleged agreement. At best, H & C may be an incidental beneficiary without standing to enforce the alleged agreement. Moreover, H & C cannot claim that it detrimentally relied upon the alleged agreement between First Vermont and the Debtors. H & C sacrificed no rights in reliance on the alleged agreement. On the contrary, its counsel was present when First Vermont and the Debtors stated their positions on the record and then proceeded with its valuation hearing. Its position was not adversely affected by reliance on the alleged agreement.
Accordingly, H & C is not a third party beneficiary to the alleged agreement between the Debtors and First Vermont and it lacks standing to sue for its enforcement.[5]
B. The Confirmation Order
H & C's appeal of the order confirming the Debtors' Second Amended Plan turns on a finding that the alleged agreement between the Debtors and First Vermont is binding. If the alleged agreement is enforced, H & C's claim is undervalued by approximately $200,000.00 and, thus, the Second Amended Plan, as it exists, violates 11 U.S.C. § 1225(a)(5)(B).[6]
Since we dismissed H & C's appeal of the February 23 Order, we do not disturb the Bankruptcy Court's determination of the value of H & C's secured claim. Accordingly, we affirm the Bankruptcy Court's order confirming the Debtors' Second Amended Plan.

CONCLUSION
For the reasons set forth above, we dismiss that part of H & C's appeal that seeks review of the February 23 Order and affirm the Bankruptcy Court's order confirming the Debtors' Second Amended Plan. SO ORDERED.
NOTES
[1] The Debtors' counsel were served with notice of this appeal but did not submit briefs or appear at oral argument.
[2] "R." refers to the transcript of record, dated July 8, 1997.
[3] We apply New York law because where, as here, federal legislation does not squarely address the question at issue (i.e. contract law), federal courts may fill the void by applying state law. See Royal Bank & Trust Co. v. Pereira (In re Lady Madonna Indus., Inc.), 76 B.R. 281, 286-87 (S.D.N.Y.1987) (explaining the Erie Doctrine).
[4] Indeed, H & C's counsel conceded at oral argument that third party beneficiary status was the only way it had standing to enforce the alleged agreement.
[5] Under certain circumstances, an interested participant at a judicial proceeding might be heard to assert that another party is "estopped" from backing out of a promise or stipulation reached with someone else, placed on the record in open court. But among the required circumstances would be that the party asserting estoppel has relied on that stipulation to its own detriment. See Cukierman v. Mechanics Bank of Richmond (In re J.F. Hink & Son), 815 F.2d 1314, 1318 (9th Cir. 1987); In re Albion Disposal Inc., 203 B.R. 884 (Bankr.W.D.N.Y.1996), aff'd in part on other grounds, 217 B.R. 394 (W.D.N.Y. 1997). There is no such showing here.
[6] Section 1225(a)(5)(B) of the Code provides:

with respect to each allowed secured claim provided for by the Plan
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim;
11 U.S.C. § 1225(a)(5)(b).