TURNER CONSTRUCTION COMPANY, Appellant, v SEABOARD SURETY COMPANY, Respondent.

First Department, December 20, 1983

### APPEARANCES OF COUNSEL

*Robert M. Callagy* of counsel (*Ronald R. Papa* with him on the brief; *Satterlee & Stephens,* attorneys), for respondent.

*Bruce L. Phillips* of counsel (*K. Gerard Amadio* with him on the brief; *Sacks, Montgomery, Pastore & Levine, P. C.,* and *Venzie, Phillips & Warshawer,* attorneys), for appellant.

### OPINION OF THE COURT

SILVERMAN, J.

This is an appeal by plaintiff from so much of an order of the Supreme Court, Special Term, as denied plaintiff's motion pursuant to CPLR 3211 (subd [a]) to dismiss the second, third and fifth counterclaims in defendant's answer for failure to state a cause of action.

Plaintiff does not pursue its appeal as to the fifth counterclaim, contending that that has been rendered moot by an amended answer which fails to reallege that counterclaim. It is stated that the new answer however does·

reallege the identical second and third counterclaims, and that therefore, the motion as to those second and third counterclaims is not moot, and neither side asks us to dismiss the appeal as to those second and third counterclaims as moot.

Defendant's brief calls the second and third counterclaims "Interference with pre-contractual relations".

Disregarding conclusory characterizations, these two counterclaims simply allege that plaintiff Turner refused to accept performance bonds issued by defendant Seaboard Surety Co. because plaintiff had and still has a dispute with Seaboard with respect to a performance bond issued by Seaboard in connection with a particular construction project, and that Turner told its subcontractors that performance bonds issued by defendant Seaboard would be unacceptable to Turner.

The basic defect in these counterclaims is that plaintiff had an absolute right to refuse to accept Seaboard bonds with or without reason; it surely had a right to refuse them after an unhappy experience with respect to a Seaboard performance bond, which Seaboard, rightly or wrongly, had refused to honor.

Plaintiff, as prime contractor in connection with the IBM building in New York, had subcontracted the electrical work to a company called Burmar. Seaboard issued its performance bond in favor of plaintiff as obligee with respect to Burmar's performance. When Burmar failed to perform, Seaboard attempted to rescind the performance bond on the claimed ground of plaintiff's fraud. Whoever may have been right in this dispute, clearly plaintiff was dissatisfied with Seaboard. It therefore had a right to decline to accept further performance bonds from Seaboard on other projects, and that is all it did here.

Concededly, performance bonds obtained by contractors or subcontractors of plaintiff Turner had to be "from a surety acceptable to Turner". Seaboard was no longer acceptable to Turner. In making this business decision Turner acted within its legal rights.

Section 762 of the Restatement of Torts, provided:

"§ 762. Privilege of Selecting Persons for Business Relations.

"One who causes intended or unintended harm to another merely by refusing to enter into a business relation with the other or to continue a business relation terminable at his will is not liable for that harm if the refusal is not

"(a) a breach of the actor's duty to the other arising from the nature of the actor's business or from a legislative enactment, or

"(b) a means of accomplishing an illegal effect on competition, or

"(c) part of a concerted refusal by a combination of persons of which he is a member." (This section is not included in Restatement, Torts 2d, only because of a change in the scope of the subject matter to be covered by that Restatement. [See Restatement, Torts 2d, § 762.])

In *House of Materials v Simplicity Pattern Co.* (298 F2d 867, 872 [CA2d]), the court said:

"Assuming the validity of appellant's argument that Simplicity's conduct was motivated solely by a desire to avoid future business dealings with a litigious customer, we must ask ourselves, 'What contractual or other legal right of its customer was violated?' * * *

"[I]t generally has been held that 'fundamental assumptions in free business enterprise,' including the belief that 'each business enterprise must be free to select its business relations in its own interest,' may justify or excuse the act of one who causes harm to another as a collateral consequence of his refusal to continue a business relation terminable at will."

In *Locker v American Tobacco Co.*.(121 App Div 443, 451-452, affd on opns below 195 NY 565) the court said: "It is the well-settled law of this State that the refusal to maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reasons whatever, and it is immaterial whether such refusal is based upon reason or is the result of mere caprice, prejudice or malice."

The privilege to refuse to deal "exists regardless of the actor's motive for refusing to enter business relations with

the other and even though the sole motive is a desire to harm the other." (Restatement, Torts, § 762, Comment *c*.)

It thus adds nothing to the pleading for Seaboard to allege that Turner's refusal to accept Seaboard performance bonds was "in retaliation for the dispute over the IBM construction project". That is only another way of saying that, being unhappy about the dispute and the business relationship, Turner decided not to accept any more performance bonds from Seaboard.

The counterclaims nowhere allege that Turner attempted to prevent third persons from dealing with Seaboard on projects on which Turner was not the prime contractor; it is even clear from the pleading that Turner only refused to accept *performance* bonds, i.e., the kind of bond which Turner claimed Seaboard had refused to honor in connection with the IBM project; the counterclaims allege that Turner continued to accept Seaboard bid bonds.

The fact that Turner told its subcontractors that Seaboard bonds would no longer be acceptable does not mean that Turner was interfering with Seaboard's independent relations with third persons. The subcontractors were free to enter into any negotiations or contracts with Seaboard they wished. On those bonds which were to secure Turner as obligee, however, Turner had a right to say it would not take the Seaboard bond. As to such bonds to which both the subcontractors and Turner were parties, Turner had a right to refuse to accept them even though this meant that the subcontractors would not enter into suretyship agreements with Seaboard to satisfy Turner's requirements.

Further, having decided not to accept Seaboard performance bonds from subcontractors on Turner jobs, Turner was quite reasonable in so informing the subcontractors. Good faith towards subcontractors required Turner to tell them that particular bonds would be unacceptable.

Finally, the pleading is not helped by such conclusory allegations as, "The sole purpose of Turner's actions was to cause damage and irreparable harm to Seaboard." (See, e.g., *Susskind v Ipco Hosp. Supply Corp.*, 49 AD2d 915.) Particularly is this true as it appears from Seaboard's own pleading that Turner was motivated by its unsatisfactory

experience with Seaboard in connection with the IBM Burmar performance bond.

Order, Supreme Court, New York County (I. KIRSCHEN-BAUM, J.), entered December 6, 1982, so far as appealed from, should be modified on the law, to the extent of granting plaintiff's motion to dismiss the second and third counterclaims for failure to state a cause of action, and said counterclaims severed and judgment may be entered dismissing them, and the order otherwise affirmed, with costs to plaintiff-appellant.

SANDLER, J. P., BLOOM and FEIN, JJ., concur with SILVERMAN, J.; ALEXANDER, J., concurs in result only.

Order, Supreme Court, New York County, entered on December 6, 1982, unanimously modified, on the law, to the extent of granting plaintiff's motion to dismiss the second and third counterclaims for failure to state a cause of action, and said counterclaims are severed and judgment may be entered dismissing them, and the order is otherwise affirmed. Plaintiff-appellant shall recover of defendant-respondent $75 costs and disbursements of this appeal.