In the Matter of LYONDELL
CHEMICAL COMPANY
et al., Debtor.

Highland Capital Management,
L.P., Plaintiff–Appellant,

v.

UBS Securities, LLC, Defendant–
Appellee.

Nos. 09–10023 (REG), 13
Civ. 03654 (AT).

United States District Court,
S.D. New York.

Jan. 31, 2014.

See also 445 B.R. 277.

Jose A. Berlanga, Richard O. Faulk, Gardere Wynne Sewell LLP, Houston, TX,

Vineet Bhatia, David M. Peterson, Susman Godfrey, LLP, Houston, TX, Mark L. Carlton, The Woodlands, TX, Israel Dahan, Howard R. Hawkins, Jr., Cadwalader Wickersham & Taft, LLP, New York, NY, George A. Davis, John J. Rapisardi, O'Melveny & Myers LLP, New York, NY, Mark C. Ellenberg, David F. Williams, Cadwalader, Wickersham & Taft LLP, Washington, DC, William J. Factor, The Law Office of William J. Factor, Ltd, Northbrook, IL, Peter M. Friedman, O'Melveny & Myers LLP, Washington, DC, Loren Jacobson, Waters & Kraus, Dallas, TX, David Leamon, David Leamon, P.C., Houston, TX, Christopher Mirick, Deryck A. Palmer, Andrew M. Troop, Pillsbury Winthrop Shaw Pittman LLP, New York, NY, for Debtor.

Andrea B. Schwartz, Paul Kenan Schwartzberg, Dep't of Justice–Office of U.S. Trustee, New York, NY, for U.S. Trustee.

John R. Ashmead, Seward & Kissel, LLP, New York, NY, Justin M. Garbaccio, Kaplan Rice LLP, New York, NY, David S. Rosner, Kasowitz, Benson, Torres & Friedman LLP, New York, NY, for Sucessor Trustee.

William Heuer, Duane Morris LLP, New York, NY, Wendy M. Simkulak, Duane Morris LLP, Philadelphia, PA, for Respondents Leonard Berkowitz and Louis Battista.

Richard Steven Miller, Kirkpatrick & Lockhart Preston Gates Ellis, New York, NY, for Corporation 9, Defendant.

Suzanna M.M. Morales, Lathrop & Gage LLP, New York, NY for Defendant Nortex Modular Leasing and Construction Company.

William H. Schrag, Thompson Hine LLP, New York, NY, Trust 42, Defendant.

Wendy S. Walker, Morgan, Lewis & Bockius, LLP, New York, NY, for Corporation 64, Defendant.

## *MEMORANDUM AND ORDER*

ANALISA TORRES, District Judge.

Appellant, Highland Capital Management, L.P. ("Highland"), appeals the April 10, 2013 decision of Bankruptcy Court Judge Robert E. Gerber which dismissed Highland's complaint alleging that Appellee, UBS Securities, LLC ("UBS"), tortiously interfered with contract and prospective economic relations by denying Highland the opportunity to participate in the exit financing of debtor Lyondell Chemical Company ("Lyondell"). *Highland Capital Mgmt., L.P. v. UBS Sec., LLC,* 491 B.R. 41 (Bankr.S.D.N.Y.2013). For the reasons stated below, the Bankruptcy Court decision is AFFIRMED.

## BACKGROUND

In January 2009, Lyondell filed for protection under Chapter 11 of the Bankruptcy Code. Compl. ¶ 7, Appellant's Excerpts of Record ("Appellant's ER") at 33, ECF No. 3, Attach. No 1. By the end of 2009, Lyondell was the world's third largest chemical company, with fifty-nine manufacturing sites in eighteen countries, and yearly revenues approaching $31 billion. Appellant's ER at 76, ECF No. 3, Attach. No. 2.

To complete its reorganization and finalize its emergence from bankruptcy, Lyondell sought exit financing, designating UBS, an investment bank, and Banc of America Securities LLC ("BOA"), as the "Joint Lead Arrangers and Joint Bookrunners to arrange and syndicate" a $1 billion senior term loan facility (the "Term Loan"). *Id.* UBS and Lyondell executed an engagement letter (the "Engagement Letter"), which provided in relevant part:

"The Joint Lead Arrangers, in consultation and cooperation with [Lyondell], will manage all aspects of any syndication, including decisions as to ... which institutions will participate." Appellee's Excerpts of Record ("Appellee's ER") at 107, ECF No. 8, Attach. No. 1. The Engagement Letter also authorized UBS to receive and accept lender commitments and to allocate the Term Loan among selected lenders. *Id.* Highland, a hedge fund with a longstanding history of lending to Lyondell, had previously invested over $200 million across Lyondell's capital structure, *see Highland,* 491 B.R. at 45, and would have welcomed the opportunity to participate in the Term Loan.

UBS and Highland were hardly strangers. In 2009 and 2010, UBS commenced two actions against Highland in the Supreme Court, New York County, alleging that Highland committed fraud in connection with a 2008 restructure of a collateralized loan obligation facility. *Id.* at 48 (taking judicial notice of Complaint, *UBS Sec. LLC v. Highland Capital Mgmt., L.P.,* 30 Misc.3d 1230(A), 924 N.Y.S.2d 312 (N.Y.Sup.Ct.2011) (Index No. 650097/2009), and Complaint, *UBS Sec. LLC and UBS AG, London Branch v. Highland Capital Mgmt., L.P.,* Index No. 650752/2010 (N.Y.Sup.Ct.2010)). The parties also found themselves on opposite sides of other lawsuits filed in that same court in 2008 and 2010, as well as in a separate action Highland initiated in Texas. *Highland,* 491 B.R. at 49 (taking judicial notice of *SPCP Group, LLC v. UBS AG,* Index No. 602418/2008 (N.Y.Sup.Ct. 2008) (in which Highland is a third-party defendant); *UBS AG v. Highland Capital Mgmt. L.P.,* 29 Misc.3d 1230(A), 920 N.Y.S.2d 245 (N.Y.Sup.Ct.2010) (Index No. 650094/2010); and *Highland Credit Opportunities CDO, L.P. v. UBS AG,* Case No. DC–10–16004).

On March 15, 2010, Lyondell sent a "Confidential Information Memorandum for Public Investors" (the "CIM") to Highland, which "offered participation" in the Term Loan. Compl. ¶ 8, Appellant's ER at 34, ECF No. 3, Attach. No 1. The CIM expressly provided that its use was "solely for informational purposes." Appellant's ER at 44, ECF No. 3, Attach. No. 2. The CIM outlined the treatment of confidential information as follows:

> ACCEPTANCE OF THIS CONFIDENTIAL INFORMATION MEMORANDUM CONSTITUTES AN AGREEMENT TO BE BOUND BY THE TERMS OF THIS NOTICE AND UNDERTAKING AND THE SPECIAL NOTICE SET FORTH ON THE COVER PAGE HEREOF.... IF THE RECIPIENT IS NOT WILLING TO ACCEPT THE CONFIDENTIAL INFORMATION MEMORANDUM ... ON THE TERMS SET FORTH IN THIS NOTICE AND UNDERTAKING AND THE SPECIAL NOTICE, IT MUST RETURN THE CONFIDENTIAL INFORMATION MEMORANDUM AND ANY OTHER EVALUATION MATERIAL TO THE ARRANGERS IMMEDIATELY WITHOUT MAKING ANY COPIES THEREOF, EXTRACTS THEREFROM OR USE THEREOF.

*Id.* (uppercase in original). The CIM also stated:

> [U]nless and until a definitive agreement regarding the Facility [Term Loan] between the parties thereto has been executed, the Recipient will be under no legal obligation of any kind whatsoever with respect to the Facility by virtue of this Notice and Undertaking except for matters specifically agreed to herein and in the Special Notice.

*Id.* at 45.

Included with the CIM was a summary of the Term Loan's proposed terms (the

"Terms Summary"), Appellant's ER at 179–90, ECF No. 3, Attach. No. 4, and a form commitment letter for lenders to express interest in the Term Loan allocation. Appellant's ER at 48, ECF No. 3, Attach. No. 2. The form commitment letter specified, in pertinent part: "[s]ubject only to satisfactory documentation, we are pleased to commit: $____ million to the $1.0 billion Senior Secured Term Loan Facility." *Id.* Parties interested in participating in the Term Loan allocation were to indicate the portion of the billion dollar Term Loan to which they were willing to commit and return the filled out commitment letter to UBS. *Id.;* Compl. ¶¶ 12–13, Appellant's ER at 35, ECF No. 3, Attach. No 1.

On March 17, 2010, Highland issued a commitment letter (the "Commitment Letter") providing, in relevant part, that: "[s]ubject only to satisfactory documentation, on behalf of our advised funds and accounts we are pleased to commit: $150 million to the $1.0 billion Senior Secured Term Loan Facility." Appellant's ER at 197, ECF No. 3, Attach. No. 4. Lyondell responded on the same day with an e-mail stating, "[t]hank you very much, we look forward to successfully close [sic] this financing" (the "Response E-mail"). *Id.* at 198.

By e-mail dated March 25, 2010, Lyondell announced changes in the terms of the Term Loan and requested that Highland "recommit" to the modifications by March 26, 2010. *Id.* at 201. On March 25, 2010, Highland agreed to the revised terms. *Id.* By March 30, 2010, Highland learned that the Term Loan allocation had been decided and that Highland had not been invited to participate. Compl. ¶ 27, Appellant's ER at 37, ECF No. 3, Attach. No 1.

On July 27, 2010, Highland brought an action in the Supreme Court, New York County, alleging breach of contract against Lyondell, and tortious interference with contract and tortious interference with prospective economic relations against UBS. Complaint at ¶¶ 31–51, *Highland Capital Mgmt., LP v. LyondellBassell Indus. N.V.,* Index No. 651112–2010 (N.Y.Sup.Ct. July 27, 2010). In that action, Highland alleged that UBS disallowed Highland's participation in order to "maliciously punish Highland for exercising its rights in the UBS/Highland dispute, by withholding from Highland a valuable opportunity," and that:

UBS intended that disabling Highland from obtaining a part of the Lyondell Term Loan would embarrass Highland and diminish its standing in the financial community, would harm Highland's own fund-raising efforts and ultimately deprive Highland of the profit to be made from the extremely successful Lyondell offering.

*Id.* at ¶¶ 26–27.

Meanwhile, in Bankruptcy Court, UBS and Lyondell filed a motion to enforce provisions of the bankruptcy plan, arguing, among other things, that the Bankruptcy Court had exclusive jurisdiction over Highland's state law claims. *See In re Lyondell Chem. Co.,* 445 B.R. 277, 285 (Bankr. S.D.N.Y.2011). The Bankruptcy Court agreed. *Id.* at 295–96.

After the Bankruptcy Court exercised jurisdiction over the state claims, on April 11, 2011, Highland filed a complaint, as an adversary proceeding within the bankruptcy case, alleging tortious interference. UBS filed a motion to dismiss the complaint for failure to state a claim, arguing that: (1) the tortious interference with contract claim should be dismissed because there was no contract between Lyondell and Highland, Appellee's ER at 32–38, ECF No. 8, Attach. No. 1; (2) both claims are "barred by the defenses of privilege not to deal and economic interest", *Id.* at 39–47; and (3) the request for a declaratory judgment should be denied because it is

predicated on legally insufficient claims. *Id.* at 47–48.

The Bankruptcy Court held that the complaint adequately pleaded malice and that the defense of privilege to act in one's own economic interest was not appropriately decided on a 12(b)(6) motion. *Highland*, 491 B.R. at 61. But the Court granted the motion to dismiss on other grounds, holding that the complaint did not adequately allege the existence of a contract (*Id.* at 59) and that the defense of privilege not to do business was a complete defense to the claim of tortious interference with business relations. *Id.* at 62. Highland appeals, arguing that the Bankruptcy Court's "prejudice against informal contracts" led to the erroneous decision that no contract was formed as a matter of law, Appellant's Br. 12–14, ECF No. 3, that the Bankruptcy Court erred in relying on material outside the record to come to that conclusion (*Id.* at 9) and that "the privilege 'not to deal' does not protect tortious interference committed with malice." *Id.* at 23–25.

## STANDARD OF REVIEW

On a bankruptcy appeal, the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013. Findings of fact are reviewed for clear error, and "the party that seeks to overturn them bears a heavy burden." *In re Old CarCo LLC*, 11 Civ. 5039, 2011 WL 5865193, at *5 (S.D.N.Y. Nov. 22, 2011), *aff'd*, 509 Fed. Appx. 77 (2d Cir.2013) (quoting *H & C Dev. Grp., Inc. v. Miner (In re Miner)*, 229 B.R. 561, 565 (2d Cir. BAP 1999)). Conclusions of law are reviewed de novo. *In re Kalikow*, 602 F.3d 82, 91 (2d Cir.2010).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[ ] and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* (citation omitted).

On a 12(b)(6) motion to dismiss, a district court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, documents possessed by plaintiffs, or documents that plaintiffs knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002). A district court considering a Rule 12(b)(6) motion must accept all factual allegations in the complaint as true, while also drawing all reasonable inferences in favor of the nonmoving party. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007); *Nesmith v. Mount Vernon City Sch. Dist.*, No. 09 Civ. 9949, 2013 WL 3326830, at *2 (S.D.N.Y. July 1, 2013). A determination whether to take judicial notice of facts is reviewed for abuse of discretion. *See Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir.2005). Affirmative defenses may be raised on a motion to dismiss, but only if they appear on the face of the complaint. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.1998).

## DISCUSSION

### I. *Tortious Interference with Contract*

■ The complaint filed in the adversary proceeding alleges that UBS tortious-

ly interfered with the contract between Lyondell and Highland when UBS did not allow Highland to participate as a lender in the Term Loan. Under New York Law, to properly state a claim of tortious interference with contract, a complaint must allege: the existence of a valid contract between the plaintiff and a third-party, the defendant's knowledge of the contract, the defendant's intentional procurement of the third-party's breach without justification, actual breach of contract and damages. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d. Cir.2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 82, 668 N.E.2d 1370 (1996)). The Bankruptcy Court properly dismissed the claim because the complaint did not sufficiently allege the existence of a contract between Highland and Lyondell.

■ Under New York law, the "existence of a contract requires an offer, acceptance, consideration, mutual assent and intent to be bound." *Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F.Supp.2d 384, 397 (S.D.N.Y.2011). "An offer must be definite and certain," rather than simply informational or exploratory. *Keis Distribs. v. Northern Distrib. Co.*, 226 A.D.2d 967, 969, 641 N.Y.S.2d 417 (3d Dep't 1996) (citing *Concilla v. May*, 214 A.D.2d 848, 849–50, 625 N.Y.S.2d 346 (3d Dep't 1995)). Highland appears to posit alternate theories of contract formation. First, Highland argues that the CIM was an offer and that the Commitment Letter was an acceptance, forming a contract between Highland and Lyondell. Appellant's Br. 5, ECF No. 3.

The CIM is a disclosure document setting forth the terms of the Term Loan and outlining the handling of confidential information. Appellant's ER at 44–46, ECF No. 3, Attach. No. 2. It explicitly stated that its use was "solely for informational

purposes," and that it created no legal obligation as to participation in exit financing "unless and until a definitive agreement regarding the Facility [Term Loan] between the parties thereto has been executed." *Id.* at 44–45. By contrast, with respect to the treatment of confidential information, the CIM stated that "[a]cceptance of this Confidential Information Memorandum *constitutes an agreement to be bound* by the terms of this Notice and Undertaking and the Special Notice set forth on the cover page hereof." *Id.* at 44 (emphasis added). Recipients not willing to be bound by the confidentiality provisions of the CIM were to return it to Lyondell and UBS. *Id.* at 44. Apart from the stated language above, no other language in the CIM expressed an intent to be bound by an agreement. The plain language of the CIM manifested a clear intent that both parties be bound by the "Special Notice" set forth earlier in the CIM. But it also explicitly stated:

> This Notice and Undertaking and the Special Notice together embody the entire understanding and agreement between the Recipient and the Arrangers with respect to the Evaluation Material and the Internal Evaluation Material and supersedes all prior understandings and agreements relating thereto. The terms and conditions of this Notice and Undertaking and the Special Notice shall apply until such time, if any, that the Recipient becomes a party to the definitive agreements regarding the Facility, and thereafter the provisions of such definitive agreements relating to confidentiality shall govern.

Appellant's ER at 46, ECF No. 3., Attach. No. 2. Moreover, no language in the CIM suggests that it was an offer.

■ The key difference between this case and the case on which Highland primarily relies, *Teachers Insurance & An-*

*nuity Association of America v. Tribune,* 670 F.Supp. 491 (S.D.N.Y.1987), is that in *Tribune,* the exchange of letters between the borrower and lender constituted an agreement that clearly indicated the parties' intent to be bound, as evidenced by the following:

> If the foregoing properly sets forth your understanding of this transaction, please evidence acceptance of the conditions of this letter by having it executed below by a duly authorized officer ... and by returning one executed counterpart.... Upon receipt by [lenders] of an accepted counterpart of this letter, our agreement to purchase from you and your agreement to issue, sell and deliver to us ... the captioned securities, shall become a binding agreement between us.

*Tribune,* 670 F.Supp. at 499. The exchange of letters included binding language on set terms, subject to satisfactory memorialization. Although the parties did not execute final documents, the "intention to create mutually binding contractual obligations is stated with unmistakable clarity" in the of exchange letters. *Id.* Here, the CIM did not specify that it was or intended to be an offer or that a borrower would be bound by an agreement upon delivery of a commitment letter to UBS. Rather, the CIM repeatedly referenced a prospective Term Loan agreement. Appellant's ER at 44–48, ECF No. 3, Attach. No. 2. Courts must be wary of " 'trapping parties in surprise contractual obligations that they never intended to undertake'." *Adjustrite Sys. v. GAB Bus. Servs.,* 145 F.3d 543, 550 (2d Cir.1998) (citing *Tribune,* 670 F.Supp. 491, 494 (S.D.N.Y.1987)).

■ Moreover, the plain language of the Engagement Letter and Commitment Letter support the conclusion that the Commitment Letter was not an acceptance. The Engagement Letter stated that UBS as a Joint Lead Arranger "in consultation and cooperation with [Lyondell, would] manage all aspects of any syndication, including decisions as to the selection of institutions to be approached and when they will be approached, when their commitments will be accepted, [and] which institutions will participate." Appellee's ER at 107, ECF No. 8, Attach. No. 1. It clearly defined UBS's role as liaison for the selection of lenders, thus delivery of a lender's commitment letter could not be binding until a definitive and forthcoming commitment was executed. Moreover, language in the Commitment Letter conditioned Highland's commitment on satisfactory and definitive memorialization of the terms, stating in relevant part: "subject only to satisfactory documentation, we are pleased to commit: $150 million to the $1.0 billion Senior Secured Term Loan Facility." Appellant's ER at 197, ECF No. 3, Attach. No. 4. Clearly, a lender's execution of a definitive agreement is a prerequisite to participation in the Term Loan.

Highland's reliance on *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1543–45 (2d Cir.1997) is unavailing. Appellant's Br. 19:1–10, ECF No. 3. In *Lazard,* the Second Circuit could not determine as a matter of law whether the words "subject to documentation" required memorialization of the parties' understanding before they were bound. *Lazard,* 108 F.3d at 1538, 1545. The case concerned an alleged breach of contact relating to the sale of bank debt that was "subject to documentation." *Id.* at 1535. Alleged inconsistencies between oral representations and a later memorialization of the sale's terms turned on whether the financial industry's custom deemed either exchange to be the agreement. *Id.* Unlike *Lazard,* this case does not involve an earlier binding agreement. Instead, Highland alleges that the earlier exchange was an offer and the later exchange was an acceptance. *Lazard,* therefore, is inapposite.

■ Highland asserts that the Bankruptcy Court reached its conclusion by improperly considering material outside of the record. Appellant's Br. 9, ECF No. 3. Highland is incorrect. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) states that for purposes for determining the sufficiency of a Rule 12(b)(6) claim, a court may consider: (1) factual claims in the plaintiff's complaint; (2) the exhibits accompanying the complaint or documents incorporated by reference; (3) documents in the plaintiff's possession or of which the plaintiff had knowledge and relied upon in bringing the case; and (4) matters of which judicial notice may be taken. *See also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208, (1992).

■ The Bankruptcy Court considered several documents, including the Engagement Letter, the CIM, the Terms Summary, the Response E-mail, and the existence of state court proceedings between Highland and UBS. *Highland,* 491 B.R. at 41–50. The Bankruptcy Court examined the Engagement Letter to identify the nature of the relationship between UBS and Lyondell, in particular UBS's authority to "manage all aspects of any syndication, including decisions as to ... which institutions will participate." Appellee's ER at 107, ECF No. 8, Attach. No. 1. The Bankruptcy Court properly considered the Engagement Letter because the complaint incorporated it by reference when specifying that UBS and BOA were Lyondell's Joint Lead Arrangers and Bookrunners. Compl. ¶ 22. The Bankruptcy Court considered the CIM, the Terms Summary, and the Response E-mail for evidence of an offer, acceptance or intent to be bound. The Bankruptcy Court properly considered these documents because the complaint was replete with language from the CIM, the Terms Summary, and the Re-

sponse E-mail. For example, it quoted language from the form commitment letter, the Term Summary and Lyondell's written acknowledgement of the Commitment Letter. Compl. ¶¶ 7–29. Although the documents were not incorporated by reference, the Bankruptcy Court properly concluded that it could consider documents either in the plaintiff's possession or those the plaintiff had knowledge of and relied upon in bringing the suit. *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d at 47–48).

■ The Bankruptcy Court also took judicial notice of two state court proceedings relating to alleged fraud in a collateralized loan obligation facility restructuring. *Highland,* 491 B.R. at 47–48. A determination whether to take judicial notice of facts is reviewed for abuse of discretion. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424 (2d Cir.2008) (citing *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d at 261). Here, the Bankruptcy Court did not abuse its discretion in taking judicial notice of the existence of other litigation involving the parties. *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir.2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings."). Moreover, because the complaint's reference to the "unrelated dispute" meant the pending state court litigation between UBS and Highland, Compl. ¶ 23, the Bankruptcy Court properly considered the state court rulings.

Finally, Highland alleges that the Bankruptcy Court based its conclusion on the "notion" that contracts cannot be formed through e-mail and Syndtrak. Appellant's Br. 9–10, ECF. No. 3. This assertion mis-

construes and overlooks the Bankruptcy Court's carefully reasoned conclusion that no definitive agreement exists between Highland and Lyondell. *Highland,* 491 B.R. at 53–62.

## II. *Tortious Interference with Prospective Economic Relations*

■ Appellant also appeals the Bankruptcy Court's dismissal of Highland's second allegation—that UBS tortiously interfered with Highland's prospective agreement with Lyondell. Appellant's Br. 10, ECF No. 3. The elements of tortious interference with prospective economic relations are: (1) the plaintiff and third party share a business relationship; (2) the defendant knew about the relationship and intentionally interfered with it; (3) the defendant's act was solely out of malice or through dishonest, unfair, or improper means; and (4) the defendant's interference injured the relationship. *Raedle v. Credit Agricole Indosuez,* 670 F.3d 411, 417 (2d Cir.2012). UBS asserts an absolute privilege to decide with whom it would deal. Appellee's Br. 23–28. Highland contends that no such defense exists under New York law. Appellant's Br. 10, 23–25, ECF No. 3.

■ New York law states that the privilege with whom to deal "exists regardless of the actor's motive for refusing to enter business relations with the other and even though the sole motive is a desire to harm the other." *Turner Constr. Co. v. Seaboard Surety Co.,* 98 A.D.2d 88, 90–91, 469 N.Y.S.2d 725 (1st Dep't 1983) (quoting Restatement, Torts § 762 Comment c.). *Turner* clarifies that:

> It is the well-settled law of this State that the refusal to maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reasons whatever, and it is immaterial whether such refusal is

based upon reason or is the result of mere caprice, prejudice or malice.

98 A.D.2d at 90, 469 N.Y.S.2d 725 (quoting *Locker v. American Tobacco Co.,* 121 A.D. 443, 451–52, 106 N.Y.S. 115 (2d Dep't 1907)). In *Turner,* the defendant asserted a counterclaim for tortious interference against the plaintiff for refusing to take the defendant's bonds from its subcontractors, thereby causing them to decline to deal with defendant. 98 A.D.2d at 89, 469 N.Y.S.2d 725. The court concluded that regardless of the allegations of malice, Turner Construction acted within the bounds of the law. *Id.* Similarly here, regardless of UBS's motive, UBS had a privilege not to deal with Highland and to preclude an agreement between Lyondell and Highland.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision is AFFIRMED. The Clerk of Court is directed to close the case.

SO ORDERED.